Pridgin v. Strickland.

gible and can be rendered certain by reference to the pleadings. (Burton *v.* Anderson, 1 T., 93; McMullen *v.* Kelso, 4 T., 235; Randon *v.* Barton, 4 T., 289; James *v.* Wilson, 7 T., 230; Wells *v.* Barnett, 7 T., 584; Parker *v.* Leman, 10 T., 116; Avery *v.* Avery, 12 T., 54; Galbreath *v.* Atkinson, 15 T., 21; Moke *v.* Fellman, 17 T., 367; Darden *v.* Mathews, 24 T., 321; Secrest *v.* Jones, 30 T., 596; Loggins *v.* Buck, 33 T., 113; Newcomb *v.* Watton, 41 T., 318; Word *v.* Wilder, 42 T., 396.)

[**427**] PRIDGIN V. STRICKLAND.

The old rule for the measure of damages in the action of trover, viz. the value of the thing at the time of conversion, and interest thereon up to judgment, besides being almost entirely exploded, has no application to our remedial system, which is independent of forms of action; here the rule varies with different property with the fact.

The owner of a negro unlawfully detained is entitled to recover not only his value but damages for the value of his services from the time of the demand up to the time of trial. (Note 83.)

Where property is unlawfully detained the owner may elect to sue for money or for the property, and so much money as is equal to the damages sustained by the detention; in either case the measure of damages for the detention is the same. In the former case the verdict and judgment may be in the aggregate for the detention of the property and damages for its detention; in the latter, for the property, fixing an alternate value on the same and damages for its detention.

Where an amendment to the petition was filed, to which the defendant excepted, and the record did not show any specific action upon it, but the verdict and judgment corresponded with the prayer of the original petition and not with the prayer introduced by the amendment, the Supreme Court presumed that the amendment had been disregarded by the parties and the court.

An amendment which would deprive the defendant of the benefit of the statute of limitations where he would be otherwise entitle ⸱ to it cannot be admitted.

In our practice we do not look to the prayer for relief for the designation of the grounds of action.

Error from Harrison. This suit was instituted by the defendant in error against the plaintiff in error in March, 1845. The petition in substance set up that plaintiff was and is the owner of a certain slave named Ben ; that the defendant had gotten possession of said slave and converted him to his own use, and withheld him from plaintiff, although demanded; that the slave is of the value of one thousand dollars. The plaintiff prayed judgment for damages to the amount of fifteen hundred dollars.

The defendant answered "not guilty," and at a subsequent [**428**] term, *i. e.*, at May Term, 1848, further answered that he had received the possession of the said negro from petitioner in pledge from petitioner for the loan of two hundred and fifty dollars, the hire of the boy to pay the interest on the said loan of the said sum. There was a trial at May Term, 1848, and verdict for the plaintiff for twelve hundred and fifty dollars, and a new trial was granted to the defendant.

At the Fall Term, 1848, an amended petition was filed, more in the form of a common-law action of detinue, praying for the value of the hire of the slave and that he should be decreed to be delivered up to the plaintiff, and claiming damages to the amount of three thousand dollars. To this amendment the defendant excepted, and his exception does not appear to have been acted upon. The defendant further answered that the said amended petition was not filed within two years after the cause of action accrued. There was a jury trial, and a verdict as follows : "The jury find for the plaintiff as follows : Negro boy, Ben, $800 ; specific damage, $450, with all costs ;" on which the following judgment was entered by the court: "It is therefore considered by the court that the plaintiff have and recover of the defendant the sum of twelve hundred and fifty dollars and all costs in this behalf expended, for which execution may issue."

A motion was made by the defendant for a new trial, which was overruled.

*W. H. Bristow,* for plaintiff in error.

This was an action brought by Hardy Strickland against Wiley W. Pridgin

214

for damages for a conversion of a negro. Original petition filed March 3d, 1845. In the original petition there is no prayer for the negro nor for his services.

On the 20th December, 1848. Strickland filed his amended petition, by which he seeks to recover the negro and his hire from Pridgin.

To this amended petition defendant excepted, that same was [**429**] not filed within two years after the cause of action had accrued; which exception the court overruled, and which overruling of said exception Pridgin assigns as error, for the following reasons:

In a petition every circumstance should be stated which the defendant has need of knowing, in order to put him on a just defense of his suit. (Duncan v. Bichtold, 6 Mart. R., 510.) And no amendment which has the effect of altering the claim contained in the petition or the defense contained in the answer can be permitted. (8 N. S. La. R., 342.) And this court ruled at the last term, in the case of Carter v. Reynolds, that in no case could an original petition be so amended as to alter the cause of action as set forth in the original petition.

In Louisiana it is ruled that actions receive their character from the nature of the relief sought, and an amendment which alters the substance of the original petition in this respect is inadmissible. (Russell v. Spriggs, 10 La. R., 424.)

Now, the gist of Strickland's original petition lay in the conversion and deprivation of his property to recover damages to the extent of the value of the thing converted, and had not for its object and result the recovery of the thing itself nor the value of the services, and by it he seeks to throw the property on the defendant and to deprive him, the defendant, of the option of restoring the property in mitigation of damages. (16 Verm. R., 138–390.) A temporary conversion will render a defendant liable, for a conversion once taken place cannot be cured. (St. John v. O'Connell, 7 Port. R., 466.) Nor if there be a tortious use or taking of the property a subsequent demand of it will not operate as a waiver of such conversion, nor entitle the defendant to prove an offer to return it upon such demand. (Maxwell v. Briggs, 17 Verm. R., 176.) At common law a recovery in trover vests the title of the property in the defendant, and the damages recovered are the price of the chattel so transferred by implication of law. (White v. Martin, 1 Port. 215; 2 Kent. Com., 388; 3 East. R., 251.) Whether the change of property relates to the conversion, the [**430**] judgment, or the satisfaction, it is evident that admitting the last to be necessary to the consummation of the transfer, it relates back to the conversion. So that children of a slave, born during the pendency of trover for the mother, cannot be recovered in a subsequent action. (White v. Martin, 1 Port. R., 215.)

The amended petition of Strickland, in changing the nature of the relief sought, alters the substance of the original petition in this respect, and that after an interval of upwards of three years. Therefore the statute of limitation is a good defense and a bar to any recovery thereon.

2d and 3d exception. If there is a legal rule for the measurement of damages the jury must follow it. (Ryan v. Beldrick, 3 McC. R., 498.) In assessing damages for a conversion, plaintiff is entitled to the value of the property at the time of its conversion and interest to the date of the judgment. (White v. Martin, 1 Port. R., 215; Weld v. Oliver, 21 Pick. R., 559.) The rule of damages in an action of trover is a question of law. (Baker v. Wheeler, 8 Wend. R., 505.) For the employment of a slave without the consent of the owner the measure of damages is the injury to the plaintiff from the employment; and if the slave be lost during the employment, will be the value of the slave. (Gray v. Cochran, 8 Port. R., 191.)

From these authorities we find that the charge asked of the judge and by him refused was in strict law the rule for the assessment of damages.

*W. P. Hill*, for defendant in error.

I. The first error assigned is, that the amended petition in this case filed by plaintiff was not filed within two years after the cause of action had accrued.

If there was error in this, why did not defendant insist upon his motion to strike out the amended petitions? But the intendment is that the statute of limitations bars the cause of action set up in the amended petition. If the amended petition did introduce a new cause of action distinct from and independent [**431**] of the cause of action disclosed in the original petition, the force of the objection would be obvious. But this is not the case ; the technical difference between *trover* and *detinue* will not be recognized here.

In both petitions the subject-matter, *i. e.*, the slave Ben, the ownership and possession of plaintiff, the illegal detention and conversion (words that in our pleading and practice in a case like this are nearly and perhaps altogether synonymous) of the slave by defendant, and the damages claimed by plaintiff, constitute the sole cause of action and the end to be obtained. The only marked difference is that the amended petition specifies a rule of estimating damages (the labor and services of the slave) which is not so specified in the original petition.

II. The second error assigned is that "the court erred in overruling the exceptions taken by defendant to the introduction by plaintiff of the evidence as to the worth of the yearly services of the negro boy from the year 1843 to the present time.

This assignment raises the proposition that the hire or value of the services of Ben could not be considered by the jury in estimating the damages to which the plaintiff was entitled.

1. The first answer to this objection is that the amended petition contained a distinct averment of the value of the services and labor of the slave, and a prayer for the recovery of the same as part of plaintiff's damages. The evidence objected to was, therefore, in strict accordance with the rule that the *allegata* and *probata* must correspond. The objection could not be sustained unless the allegation which the proof was intended to sustain was wholly immaterial to the case or grossly repugnant to the rules of law which govern in such cases.

2. But I prefer to meet the proposition on its own merits, and insist that plaintiff was entitled to recover the value of the labor and services of his slave. "It is a general and very [**432**] sound rule of law," said Sedgwick, in delivering the opinion of the Supreme Court of Massachusetts in Rockwood *v.* Allen, Ex'r, 7 Mass. R., p. 254, "that where an injury has been sustained for which the law gives a remedy, that remedy shall be commensurate to the injury sustained." "It is a natural and legal principle," said Shippen, Chief Justice of the Supreme Court of Pennsylvania, "that the compensation should be equivalent to the injury." (Bussey *v.* Donaldson, 4 Dall. B. R., p. 206.)

"The general rule of law," said Story, J., in Dexter *v.* Spear, 4 Mass. R., 115, "is this : whoever does an injury to another is liable in damages to the extent of that injury. It matters not whether the injury is to the property or the person or the rights or the reputation of another."

Washington, J., in Walker *v.* Smith, 1 Wash. C. C. R., p. 132, said the "rule is that the plaintiff should recover so much as will repair the injury sustained by the misconduct of the defendant." (Sedgw. Meas. of Dam., p. 29, 30.)

In the application of this exact rule of justice it became necessary to establish other rules for ascertaining the amount of damages to which the injured party would be entitled. In England these rules must have respect to the structure of the forms of action in use and the rules of evidence applied to them. (Sedg. Meas. of Dam., 206–7.) One rule of damages was made for actions *ex contractu*, and another rule for actions *ex delicto*. If the form of action belonged to the class *ex contractu* the damages were strictly limited to the direct pecuniary loss resulting from the breach of the contract in question, (Ib.) And no matter if the facts of the case demanded a more generous compensation, it could not be allowed.

Is not the reason and principle precisely applicable to this case which is applied to actions for the recovery of mesne profits? In the action of ejectment the plaintiff recovers the annual value or mesne profits of the land, as a

## Pridgin v. Strickland.

corollary from the recovery of the land itself. Mesne profits of land are those received while the property is withheld from its rightful occupant. [**433**] They are recoverable whether the lands are withheld in good or in bad faith. (Sedgw. on Damages, 121–124.) On what principle are the profits restored with the land? Because the right to the first is as unquestionable as the right to the last; and again, because they can be ascertained with as much precision as the metes and bounds of the land itself. Is it not equally so in the case of a slave? The value of his hire is as much within the scope of proof and as easy to be established by proof as the profits of land.

But we are not without authority in point. In Banks *v.* Hatton, 1 Nott & McCord, 221, the doctrine is laid down that, "in an action for the conversion of negroes, the measure of damages should be their value and the value of their labor." This authority is not in Tyler, but I have seen it, and it sustains the above doctrine fully. It is referred to in 3 U. S. Dig., p. 591, sec. 240; see also the case of Buford *v.* Fannew, 1 Bay R., 273–274, where the same doctrine is clearly maintained. In Georgia the same point is directly decided in the case of Schley *v.* Lyon & Rutherford, 6 Ga. R., 535, in which the above case of Banks *v.* Hatton is referred to as authority.

Perhaps I ought to have considered this question as already decided by this court; for, although I know of no case in which the precise point has been adjudged, I find cases in which hire was recovered by the plaintiff, and the judgment for hire affirmed. (Davis *v.* Loften, 6 Tex. R., 489; Robbins' Adm'r. *v.* Walters, 2 Tex. R., 130.)

LIPSCOMB, J. There have been presented several distinct grounds on which the court is asked to reverse the judgment in this case; but it is believed that everything material can be noticed under the objection to the amendment of the plaintiff's petition, and that therefore it is not essential to a correct decision that those points should be separately and distinctly examined; and it may well be remarked here that all the embarrassment thrown around this case arises from an attempt to [**434**] engraft the common-law forms of action upon our system, when it is so clear, and has been so often announced in judicial opinions, that neither the action of trover nor detinue is known to our forum, and that our petition, in its structure, is more analogous to a bill in chancery or to a special action on the case than to any other forms known in other systems of jurisprudence.

The petition as first framed, though very objectionable in this, that it had too many of the fictions to be found in a common-law declaration in trover, was more in conformity with what our petition ought to be than the amendment, and there can be but little doubt that the plaintiff could have achieved the same result, had it not been amended, which was afterwards given to him by the verdict of the jury. Whatever may have formerly been the difficulty in settling the rule of damages for an injury done, when that injury is susceptible of judicial cognizance in a civil suit, if the damage is immediate and not too remotely consequential, that it should be commensurate with the injury sustained, is a principle that is now believed to obtain even in courts where they are fettered, and in some measure controlled, by long-established judicial usages under particular forms of actions. It is so in trover, in detinue, and in trespass; and what seems a little strange is, that this doctrine of extending the amount of damages to make it adequate to the injury, in its early growth, received more encouragement in the English courts than in the common-law courts of the United States. (See cases referred to in Sedgw. on the Measure of Damages, p. 3, Burr., 1363; 1 Car. & Payne, 625.) And there can be no doubt that it may safely be assumed that the old rule in the action of trover, that the value of the thing at the time of conversion and interest thereon up to the judgment, if not entirely abolished, has been subjected to so many exceptions as to leave it not worth preservation, and the amount of the damage will vary according to the particular property to which it may be applied; a workman would be allowed damage, not limited to the value of his tools at the time

Pridgin v. Strickland.

of [435] conversion, and interest thereon, but such amount as the jury might believe from the evidence would be more adequate to the loss he sustained in being deprived of their use in the exercise of his trade. (1 Johns. R., 65.) And, doubtless, on the same principle, the owner of a negro would be allowed to recover not only his value but damages for the value of his services from the time of the demand up to the time of the trial; and such, no doubt, would be the correct rule, and in practice has been acted upon in our courts on a petition setting forth an injury like the one complained of in this suit.

If the party injured and deprived of his property has a particular fancy or preference for the specific property instead of recovering its value and damages for the detention, there is no change in the narration of facts of the injury for which he seeks redress. In the concluding part, instead of asking damages to be adjudged to him, he will ask for the specific property to be delivered up and damages for its detention, and the jury would then find for the plaintiff the property sued for, fixing an alternate value on the same and damages equal to the actual injury sustained for its detention. On such finding the judgment would be that the defendant should deliver up the property and pay the damages assessed for its detention, and on failure to deliver the property the plaintiff should have judgment and execution for the value found by the jury and the damages assessed for its detention. In the case under consideration the jury have found the value of the slave $800, and specific damages $450. This would have been a good verdict if the original petition had stood alone, without its hybrid associate presented by the amendment. It would have been no objection to the verdict that the jury had two distinct sums, that when added together formed the aggregate of the damages to which the plaintiff was entitled. Their finding the different sums only shows the rule by which they arrived at the result, and the judgment of the court could well have thrown together the two sums, as it has been done in this case. The verdict and the judgment are both just such as [436] might well have been returned and rendered on the original petition, and both the jury and the judge seem to have disregarded the amendment.

Can we presume from the record before us that the court did disregard the amendment? I think we can, because the record nowhere shows that it had been acted on and approved by the court, nor was there any action on the defendant's exception to it; it seems to have been passed over in silence, and never brought to the notice of the court. The evidence introduced and all the rulings of the court, as shown by the bill of exceptions, might just as well have occurred on a trial upon the original as upon the amended petition; hence it may well be concluded that it was disregarded.

To the objection so well presented by the counsel for the plaintiff in error, on the hypothesis that the amendment had received the sanction of the court, that a party ought not to be permitted to amend his petition in such way as to subject the defendant to answer a new cause of action—and he illustrated it by supposing that an amendment might introduce new matter, which, if it related back to the commencement of the suit, would deprive the defendant of the benefit of the statute of limitations, that had completed the bar before the amendment—it is readily admitted an amendment drawing with it such consequences ought not to be received. The amendment offered, however, in this case would not have, as it is believed, been attended with such grave results if it had been received; and should an amendment in any case have such an effect, so far at least it would be error to receive so much of it. An amendment should not be permitted to substitute a new cause of action, but under our practice we are not prepared to say that we must look to the prayer of judgment for the designation of the grounds of action; our practice has never been so stringent.

We believe that there is no error in the record that can authorize a reversal of the judgment, and it is therefore affirmed.

Judgment affirmed.

Note 83.—Anderson v. Duffield, *ante*, 237.